IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINISAR CORPORATION, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-653 (SLR) |
| AGILENT TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## AMENDED COMPLAINT

### PARTIES

1.  Plaintiff Finisar Corporation ("Finisar") is a Delaware corporation having a principal place of business at 1308 Moffett Park Drive, Sunnyvale, California, and does business in this judicial district.

2.  Defendant Agilent Technologies, Inc. ("Agilent") is a Delaware corporation doing business in this judicial district, and has a principal place of business at 395 Page Mill Road, Palo Alto, California.

### JURISDICTION AND VENUE

3.  This is an action for damages and injunctive relief based upon patent infringement arising under Title 35 of the United States Code.

4.  Upon information and belief, defendant Agilent has transacted business in this District, contracted to supply goods or services in this District, and has otherwise purposely availed itself of the privileges and benefits of the laws of the state of Delaware. This Court has

jurisdiction over Agilent because Agilent is a Delaware corporation and has committed acts of patent infringement during the course of its business in this District.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391.

## THE PATENTS IN SUIT

7. On May 28, 1991, U.S. Patent No. 5,019,769 ("the '769 patent"), entitled "Semiconductor Laser Diode Controller and Laser Diode Biasing Control Method," was duly and legally issued to Frank H. Levinson. Finisar is the owner of the entire right, title, and interest in and to the '769 patent. A true and correct copy of the '769 patent is attached as Exhibit A.

8. On September 6, 2005, U.S. Patent No. 6,941,077 ("the '077 patent"), entitled "Memory Mapped Monitoring Circuitry For Optoelectronic Device," was duly and legally issued to Lewis B. Aronson and Lucy G. Hosking. Finisar is the owner of the entire right, title, and interest in and to the '077 patent. A true and correct copy of the '077 patent is attached as Exhibit B. The '077 patent is a continuation of U.S. Patent Application No. 09/777,917, which was filed on February 5, 2001 and was published on October 17, 2002 as U.S. Pat. App. Publication No. 20020149821 A1 ("the '821 application").

9. On October 4, 2005, U.S. Patent No. 6,952,531 ("the '531 patent"), entitled "System And Method For Protecting Eye Safety During Operation Of A Fiber Optic Transceiver," was duly and legally issued to Lewis B. Aronson and Lucy G. Hosking. Finisar is the owner of the entire right, title, and interest in and to the '531 patent. A true and correct copy

of the '531 patent is attached as Exhibit C. The '531 patent is a continuation of U.S. Patent Application No. 10/266,869, which was filed on October 8, 2002 and is a continuation-in-part of the '821 application.

10. On October 18, 2005, U.S. Patent No. 6,957,021 ("the '021 patent"), entitled "Optical Transceiver With Memory Mapped Locations," was duly and legally issued to Lewis B. Aronson and Lucy G. Hosking. Finisar is the owner of the entire right, title, and interest in and to the '021 patent. A true and correct copy of the '021 patent is attached as Exhibit D. The '021 patent is a continuation of the '821 application.

## FINISAR'S DIGITAL DIAGNOSTICS TECHNOLOGY

11. Fiber optic transceivers are used to provide the electrical-to-optical and optical-to-electrical conversion that electronic equipment requires to communicate over fiber optic cables. A typical transceiver has a laser (to transmit optical signals), a photodiode (to receive optical signals), and associated electronic circuitry.

12. Finisar is a leading supplier of fiber optic transceivers and spends substantial sums on research and development to develop new technology and bring innovative products to market. As part of this effort, Mr. Aronson and Ms. Hosking developed digital diagnostics technology to improve Finisar's transceivers.

13. Digital diagnostics technology allows real-time monitoring of transceiver operating conditions, and helps locate faults in fiber optic systems, simplifying maintenance and enhancing reliability. For example, monitoring of laser bias current, laser output power, and temperature allows users to predict transceiver lifetime. Other aspects of Finisar's technology allow advanced transceiver control, which improves performance and safety. Control functions

include digital temperature compensation, which allows a transceiver to compensate for known temperature variations in key laser characteristics, such as slope efficiency.

14. Digital diagnostic monitoring features in fiber optic transceivers are now in wide use, in no small part because of the efforts of Finisar. Aronson and Hosking have worked to bring their technology to the entire industry—including Finisar's competitors—not only by designing new products, but also by working with industry committees to create standards and common specifications for transceiver digital diagnostics.

15. One such specification is the SFF-8472 specification, entitled "Digital Diagnostic Monitoring Interface for Optical Transceivers," which was published by the Small Form Factor Committee. This document specifies a digital diagnostic feature set for SFPs (a particular kind of transceiver). It calls for on-board sensing and digitization of parametric data, scaling and calibration of the result, and a common memory structure to store the information for access over a two-wire serial interface.

16. This technology was developed in large part by Aronson and Hosking. That the SFF-8472 specification relies upon some of their inventions is not a coincidence.

17. The Technical Editors of the SFF-8472 specification were Aronson and Hosking, along with Dan Kane, another Finisar employee. They shepherded the specification from its first preliminary draft in April 2001 to its publication in August 2002.

18. Industry adoption of the SFF-8472 specification was swift. SFF-8472-compliant transceivers are now widely available.

19. Similar digital diagnostic feature sets have been included in other widely used industry MSA specifications, such as the XFP and DWDM optical transceiver standards. For example, the XFP specification states that the mandatory XFP 2-wire serial interface is

"modeled largely after the digital diagnostics monitoring interface proposed for the SFP and GBIC optical transceivers and defined in SFF draft document SFF-8472 Rev 9.3 . . . ."

20. All of the major transceiver manufacturers, including Agilent, are now making transceivers that include digital diagnostics. The wide acceptance of Finisar's digital diagnostics technology by Finisar's competitors demonstrates the industry's recognition of the value and importance of Finisar's innovation.

21. For example, Tom Fawcett, worldwide marketing manager for Agilent's Fiber Optic Products, was referring to the SFF-8472 MSA-compliant digital diagnostic interface when he said in a May 2003 press release that digital diagnostics was a "leading-edge" feature that Agilent's customers required.

### AGILENT'S KNOWING USE OF FINISAR'S DIGITAL DIAGNOSTICS TECHNOLOGY

22. Agilent knew that it was using Finisar's intellectual property when it began incorporating the new digital diagnostics technology into its products, and not only because it knew the standards it was relying upon were written by Finisar employees. When other industry participants were deciding which technology to use in various standards, they knew that Finisar had patents and pending applications directed to the technology that was ultimately chosen, because Finisar had disclosed that fact to them.

23. For example, in August 2001, Finisar notified the SFF Committee's Working Group on Transceivers that certain implementations of the proposed SFF-8471 specification may require Finisar intellectual property. In July 2002, Finisar disclosed to the XFP members that Finisar had issued and pending patents related to transceiver digital diagnostics that may be required for some implementations of the XFP-MSA specification.

24.     The value of the new digital diagnostics technology was such that the disclosure of Finisar's patent position did not dissuade any of Finisar's competitors from incorporating that technology into the industry specifications or into their products. For example, Agilent voted in favor of the SFF-8471 specification. So did EMC, ENDL, FCI/Berg, Finisar, Foxconn International, Hewlett Packard, Hitachi Cable, Honda Connector, IBM, Madison Cable, Micrel, Picolight, Stratos Lightwave, Sun Microsystems, Tyco AMP, and Unisys. In fact, no SFF Committee members voted against the specification.

25.     Agilent voted to adopt and publish the SFF-8471 specification even though Agilent had been informed that Finisar claimed to have intellectual property rights with respect to the SFF-8471 specification.

26.     But this was not the only means by which Finisar communicated its patent position to Agilent. Finisar had also contacted Agilent directly, seeking a license agreement.

## FINISAR'S OVERTURES TO AGILENT

27.     In November 2002, shortly after the publication of the '821 application, Finisar contacted Randy Clark of Agilent to offer Agilent a license to Finisar's digital diagnostics technology, including the '821 application, as well as the '769 patent. Finisar had previously contacted Agilent about licensing Finisar's digital diagnostics technology; Mr. Clark suggested that Finisar wait for the publication of the Aronson/Hosking patent application, which Finisar did. Agilent's counsel James Pintner responded on November 21, 2002, and wrote that "at this time Agilent has no interest in entering license negotiations."

28.     Later that same day, Finisar wrote to Mr. Pintner asking for a conference to discuss the reasons (if any) why Agilent no longer wanted to discuss the licensing of digital

diagnostics or to talk about Agilent's interest in other Finisar technologies. Agilent did not respond until March 2003, when it expressed its lack of interest in negotiating a license.

29. On May 16, 2003, Finisar wrote Mr. Pintner to direct his attention to an Agilent webpage, which demonstrated that Agilent had incorporated Finisar's digital diagnostic technology into its transceiver products. Finisar also pointed out that the '769 patent covered Agilent's products as well, and invited Mr. Pintner to meet to discuss a license.

30. Mr. Pintner met with Finisar's representatives at Finisar on June 10, 2003. In a presentation to Mr. Pintner, Finisar explained how Agilent's optical transceiver products (including those compliant with the SFF-8472 and XFP specifications) infringed the claims of the '769 patent and the '821 application. These products included:

- Agilent's HFCT-5745xx transceiver module, entitled "Single Mode SFP Transceiver for SONET OC-48/SDH STM-16 with Digital Diagnostic Monitoring"
- Agilent's HFBR-57L5AP transceiver module, entitled "Agilent HFBR-57L5AP Digital Diagnostic SFP 850 nm Transceiver for Fibre Channel 1.0625 Gb/s and Ethernet 1.25 Gb/s"
- Agilent's HFBR-57M5AP transceiver module, entitled "Agilent HFBR-57M5AP Digital Diagnostic Small Form Pluggable Transceiver for Fibre Channel 2.125, 1.0625 GBd and 1.25 GBd Ethernet"

31. A copy of the presentation was provided to Agilent, as was Finisar's license offer. At the conclusion of the meeting, Mr. Pintner promised to respond to Finisar's explanation and offer. But he did not.

32. In September 2003, Finisar wrote to Agilent, asking for a response to Finisar's offer. Finisar pointed out that in the intervening three months, Agilent had continued to bring products to market that required a license under the '769 patent and used the technology of the '821 application. One such product was Agilent's HFBR-5923L 2x6 transceiver module, and another was Agilent's HFBR-779B transmitter.

33. Agilent still did not respond. In February 2004, Finisar again wrote to Agilent. Finisar notified Agilent that the claims of the '821 application, which Agilent infringed, had been allowed by the Patent Office.

34. Agilent still did not respond. Finisar wrote to Agilent in March 2004, enclosing a copy of the '821 claims that had been allowed. In its letter, Finisar stated that "the ineluctable conclusion is that Agilent's silence is deliberate, and that it has made a choice to not respect Finisar's intellectual property rights and the contributions that Finisar has made to the industry." Finisar again expressed its interest in reaching an agreement between the companies.

35. Agilent still did not respond. Finisar next wrote to Agilent in April 2004. Finisar pointed out that Agilent continued to exploit Finisar's digital diagnostics technology. Finisar called out a February 24, 2004 press release, in which Agilent had announced new products that featured digital diagnostics technology, including XFP MSA-compliant fiber optic transceivers. Examples included the "HFCT-711XPD 1310 nm with digital diagnostics" and the "HFCT-721XPD 10 km, 1300 nm, lower cost Ethernet and Fibre Channel only version that features digital diagnostics."

36. After nearly a year of silence, on May 10, 2004, Agilent finally responded to Finisar's June 2003 presentation. But Agilent's response was not substantive. With respect to the '769 patent, Agilent made no argument in opposition to Finisar's evidence of Agilent's infringement, but wrote only that it had studied the presentation and was "not at present persuaded that we need a license."

37. Agilent made no argument in opposition to Finisar's evidence of Agilent's infringement of the '769 patent. With respect to the '821 application, Agilent stated that it was

studying the allowed claims, and promised to advise Finisar of Agilent's conclusions by early July.

38. Agilent did not respond as it promised it would. On January 3, 2005, Finisar wrote to Agilent to ask for the conclusions of its analysis. Finisar also provided Agilent with copies of seven additional published patent applications related to digital diagnostics technology, including U.S. Pat. App. Publication No. 20040175172 A1, which later issued as the '077 patent.

39. Agilent never provided the promised information. As of this date, Agilent has not responded to Finisar's January 2005 letter.

40. In the face of Agilent's continuing and ever-increasing use of Finisar's patented technology, Agilent's repeated rejections of Finisar's license offers, and Agilent's failure to explain its position, Finisar filed the instant suit.

**CLAIM I**

**INFRINGEMENT OF THE '769 PATENT**

41. Finisar realleges and incorporates herein by reference the allegations contained in paragraphs 1-40.

42. Agilent has infringed and continues to infringe; has induced and continues to induce others to infringe; and/or has committed and continues to commit acts of contributory infringement of, one or more of the claims of the '769 patent. Agilent's infringing activities in the United States and this District include the development, manufacture, use, importation, sale, and/or offer for sale of optoelectronic transceivers and contributing to and inducing others to do the same. Such products have no substantial noninfringing use. Agilent's infringing activities violate 35 U.S.C. § 271.

43. Agilent's infringement has been, and continues to be, willful. Agilent has had and continues to have notice of the '769 patent; and despite such notice continues to willfully engage in acts of infringement without regard to the '769 patent, and will continue to do so unless otherwise enjoined by this Court.

44. As a consequence of Agilent's infringing activities regarding the '769 patent, Finisar has suffered monetary damages in an amount to be determined at trial. On information and belief, the revenue that Agilent has received with respect to its infringing fiber optic transceivers, for which it must pay to Finisar its lost profits, is in excess of $1.1 billion for the six years prior to the commencement of this suit.

45. Unless and until Agilent is enjoined from future infringement, Finisar will suffer irreparable harm.

## CLAIM II

### INFRINGEMENT OF THE '077 PATENT

46. Finisar realleges and incorporates herein by reference the allegations contained in paragraphs 1-45.

47. Agilent has infringed and continues to infringe; has induced and continues to induce others to infringe; and/or has committed and continues to commit acts of contributory infringement of, one or more of the claims of the '077 patent. Agilent's infringing activities in the United States and this District include the development, manufacture, use, importation, sale, and/or offer for sale of optoelectronic transceivers and contributing to and inducing others to do the same. Such products have no substantial noninfringing use. Agilent's infringing activities violate 35 U.S.C. § 271.

48. Agilent's infringement is willful. Agilent embarked on a product strategy that was dependent on the exploitation of Finisar's patented and patent-pending technology. But Agilent repeatedly rejected Finisar's offers to license Finisar's patents and patent applications, which include the application (No. 10/800,177) that became the '077 patent. Agilent continues to willfully engage in acts of infringement, and will continue to do so unless otherwise enjoined by this Court.

49. As a consequence of Agilent's infringing activities regarding the '077 patent, Finisar has suffered monetary damages in an amount to be determined at trial. At a minimum, and in addition to lost profits as alleged in paragraph 44 above, Finisar would be entitled to no less than a reasonable royalty for Agilent's infringement, including preissuance royalties due under 35 U.S.C. § 154.

50. Unless and until Agilent is enjoined from future infringement, Finisar will suffer irreparable harm.

## CLAIM III

### INFRINGEMENT OF THE '531 PATENT

51. Finisar realleges and incorporates herein by reference the allegations contained in paragraphs 1-50.

52. Agilent has infringed and continues to infringe; has induced and continues to induce others to infringe; and/or has committed and continues to commit acts of contributory infringement of, one or more of the claims of the '531 patent. Agilent's infringing activities in the United States and this District include the development, manufacture, use, importation, sale, and/or offer for sale of optoelectronic transceivers and contributing to and inducing others to do

the same. Such products have no substantial noninfringing use. Agilent's infringing activities violate 35 U.S.C. § 271.

53. Agilent's infringement is willful. Agilent embarked on a product strategy that was dependent on the exploitation of Finisar's patented and patent-pending technology. But Agilent repeatedly rejected Finisar's offers to license Finisar's patents and patent applications, which include the application (No. 10/713,752) that became the '531 patent. Agilent continues to willfully engage in acts of infringement, and will continue to do so unless otherwise enjoined by this Court.

54. As a consequence of Agilent's infringing activities regarding the '531 patent, Finisar has suffered monetary damages in an amount to be determined at trial. At a minimum, and in addition to lost profits as alleged in paragraph 44 above, Finisar would be entitled to no less than a reasonable royalty for Agilent's infringement, including preissuance royalties due under 35 U.S.C. § 154.

55. Unless and until Agilent is enjoined from future infringement, Finisar will suffer irreparable harm.

## CLAIM IV

### INFRINGEMENT OF THE '021 PATENT

56. Finisar realleges and incorporates herein by reference the allegations contained in paragraphs 1-55.

57. Agilent has infringed and continues to infringe; has induced and continues to induce others to infringe; and/or has committed and continues to commit acts of contributory infringement of, one or more of the claims of the '021 patent. Agilent's infringing activities in the United States and this District include the development, manufacture, use, importation, sale,

and/or offer for sale of optoelectronic transceivers and contributing to and inducing others to do the same. Such products have no substantial noninfringing use. Agilent's infringing activities violate 35 U.S.C. § 271.

58. Agilent's infringement is willful. Agilent embarked on a product strategy that was dependent on the exploitation of Finisar's patented and patent-pending technology. But Agilent repeatedly rejected Finisar's offers to license Finisar's patents and patent applications, which include the application (No. 10/713,685) that became the '021 patent. Agilent continues to willfully engage in acts of infringement, and will continue to do so unless otherwise enjoined by this Court.

59. As a consequence of Agilent's infringing activities regarding the '021 patent, Finisar has suffered monetary damages in an amount to be determined at trial. At a minimum, and in addition to lost profits as alleged in paragraph 44 above, Finisar would be entitled to no less than a reasonable royalty for Agilent's infringement, including preissuance royalties due under 35 U.S.C. § 154.

60. Unless and until Agilent is enjoined from future infringement, Finisar will suffer irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1. A judgment that Agilent has infringed, induced infringement of, and contributorily infringed, the '769, '077, '531, and '021 patents in violation of 35 U.S.C. § 271;

2. Injunctive relief enjoining defendant Agilent, its officers, agents, servants, employees and attorneys and all other persons in active concert or participation with them as follows:

   (i)  from manufacturing any products falling within the scope of the claims of the '769, '077, '531, and '021 patents;

   (ii)  from using any product or method falling within the scope of any of the claims of the '769, '077, '531, and '021 patents;

   (iii)  from selling or offering to sell any product or method falling within the scope of any of the claims of the '769, '077, '531, and '021 patents;

   (iv)  from importing any product into the United States which falls within the scope of the '769, '077, '531, and '021 patents or was made using a method falling within the scope of the '769 and '077 patents;

   (v)  from actively inducing others to infringe any of the claims of the '769, '077, '531, and '021 patents;

   (vi)  from engaging in acts constituting contributory infringement of any of the claims of the '769, '077, '531, and '021 patents; and

   (vii)  from all other acts of infringement of any of the claims of the '769, '077, '531, and '021 patents;

3. A declaration that Agilent's infringement of the '769, '077, '531, and '021 patents was willful and deliberate and that this case is exceptional pursuant to 35 U.S.C. §§ 284 and 285;

4. An award of damages adequate to compensate Finisar for Agilent's infringement of the '769, '077, '531, and '021 patents, including treble damages and all other categories of damages allowed by 35 U.S.C. § 284;

5. An award of Finisar's costs and attorneys' fees as permitted by law, including pursuant to 35 U.S.C. § 285;

6. An award of pre-judgment interest;

7. That defendant Agilent be ordered to deliver up for destruction all infringing products in its possession; and

8. For such other and further relief as this Court deems Finisar may be entitled to in law and in equity.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiff Finisar Corporation*

OF COUNSEL:

James Pooley
Marc David Peters
MILBANK, TWEED, HADLEY & MCCLOY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2109

Dated: October 24, 2005
489601

- 16-

## JURY DEMAND

Finisar demands a jury trial on all issues triable to a jury in this matter.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiff Finisar Corporation*

OF COUNSEL:

James Pooley
Marc David Peters
MILBANK, TWEED, HADLEY & MCCLOY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2109

Dated:  October 24, 2005
489601

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2005, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Josie W. Ingersoll, Esquire
> YOUNG CONAWAY STARGATT & TAYLOR
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 24, 2005 upon the following individuals in the manner indicated:

| **BY HAND DELIVERY** | **BY FEDERAL EXPRESS** |
|---|---|
| Josie W. Ingersoll, Esquire | Jesse J. Jenner, Esquire |
| YOUNG CONAWAY STARGATT & TAYLOR | ROPES & GRAY LLP |
| The Brandywine Building | 1251 Avenue of the Americas |
| 1000 West Street, 17th Floor | New York, NY 10020-1105 |
| Wilmington, DE 19899-0391 | |

*/s/ Mary B. Graham*

Mary B. Graham (#2256)