IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINISAR CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AGILENT TECHNOLOGIES, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 05-653-SLR |

**AGILENT TECHNOLOGIES' ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM**

Defendant Agilent Technologies, Inc. ("Agilent") hereby demands a trial by jury on all issues so triable and, for its answer, responds to Finisar Corporation's ("Finisar") allegations in the Amended Complaint. The numbered paragraphs correspond to the numbered paragraphs of the Amended Complaint. The headings used are for ease of reference only.

1.  Upon information and belief, Agilent admits the allegations in paragraph 1 of the Complaint.

2.  Agilent admits the allegations in paragraph 2.

3.  Agilent admits that Finisar, through its Complaint and Amended Complaint, has initiated an action for patent infringement under Title 35 of the United States Code, but denies any infringement.

4.  Agilent admits that it has transacted business and contracted to supply goods and services in the state of Delaware. Agilent also admits that it is incorporated under the laws of Delaware and, accordingly, has availed itself of the privileges and benefits of the laws of

the state of Delaware. Agilent admits that this Court has jurisdiction over Agilent, but denies any infringement.

    5.  Agilent admits the allegations in paragraph 5.

    6.  Agilent admits the allegations in paragraph 6.

    7.  Agilent admits that U.S. Patent No. 5,019,769 ("the '769 patent") is entitled "Semiconductor Laser Diode Controller and Laser Diode Biasing Control Method." Agilent also admits that the '769 patent states on its face that it issued on May 28, 1991, and that Frank H. Levinson is listed as an inventor. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 7, and therefore denies them.

    8.  Agilent admits that U.S. Patent No. 6,941,077 ("the '077 patent") is entitled "Memory Mapped Monitoring Circuitry For Optoelectronic Device." Agilent also admits that the '077 patent states on its face that: it issued on September 6, 2005, Lewis B. Aronson and Stephen G. Hosking are listed as inventors, and the '077 patent resulted from a continuation of Application No. 09/777,917 which was filed on February 5, 2005. Agilent also admits that U.S. Patent Application No. 20020149821 A1 ("the '821 application") states on its face that it corresponds to Application No. 09/777,917, and that it published on October 17, 2002. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 8, and therefore denies them.

    9.  Agilent admits that U.S. Patent No. 6,952,531 ("the '531 patent") is entitled "System And Method For Protecting Eye Safety During Operation Of A Fiber Optic Transceiver." Agilent also admits that the '531 patent states on its face that: it issued on October 4, 2005; Lewis B. Aronson and Lucy G. Hosking are listed as inventors; the '531 patent resulted

from a continuation of Application No. 10/266,869 which was filed on October 8, 2002, and is a continuation-in-part of Application No. 09/777,917. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 9, and therefore denies them.

10. Agilent admits that U.S. Patent No. 6,957,021 ("the '021 patent") is entitled "Optical Transceiver With Memory Mapped Locations." Agilent also admits that the '021 patent states on its face that: it issued on October 18, 2005; Lewis B. Aronson and Stephen G. Hosking are listed as inventors; and that the '021 patent resulted from a continuation of Application No. 09/777,917. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10, and therefore denies them.

11. Agilent admits the allegations in paragraph 11.

12. Agilent is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

13. Agilent is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies them.

14. Agilent is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies them.

15. Agilent admits that SFF-8472 is a "Specification for Diagnostic Monitoring Interface for Optical Xcvrs." Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15, and therefore denies them.

16. Agilent is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies them.

17. Agilent admits that Dan Kane is identified as a technical editor for the SFF-8472 specification. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 17, and therefore denies them.

18. Agilent is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies them.

19. Agilent admits that a portion of the XFP specification states that the 2-wire interface is "modeled largely after the digital diagnostics monitoring interface proposed for the SFP and GBIC optical transceivers and defined in SFF draft document SFF-8472 Rev. 9.3...." Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19, and therefore denies them.

20. Agilent admits that it manufactured transceiver products that included some digital monitoring functions until December 1, 2005, but denies any infringement. Agilent denies that it is "now making transceivers that include digital diagnostics." Agilent is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies them.

21. Agilent admits that in May 2003, it issued a press release in which Tom Fawcett is identified as a worldwide marketing manager for Agilent's Fiber Optic Products and is quoted in part as stating that Agilent's "new tri-rate transceiver and digital diagnostics feature demonstrates Agilent's ability to deliver the leading-edge features our customers require..." Agilent denies the remaining allegations of paragraph 21.

22. Agilent denies that it incorporated Finisar's purported patented technology in Agilent's products. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22, and therefore denies them.

23. Upon information and belief, Agilent admits that in July 2002, Finisar disclosed to some XFP committee members that it believed that its intellectual property may be required for some implementations of the XFP MSA specification. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 23, and therefore denies them.

24. Agilent denies that it voted in favor of the SFF-8471 specification. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 24, and therefore denies them.

25. Agilent denies the allegations of paragraph 25.

26. Agilent admits that Finisar contacted Agilent about a possible license agreement, but denies that Agilent ever needed to take a license. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 26, and therefore denies them.

27. Agilent admits that in November 2002, Finisar contacted Randy Clark of Agilent about a possible license relating to Finisar's purported digital diagnostics technology, including the '821 application and '769 patent, but denies that Agilent ever needed to take a license. Agilent also admits that Finisar had contacted Agilent prior to November 2002 with respect to a possible license, and that on November 21, 2002, Agilent's Corporate Counsel, James Pintner wrote to Finisar stating that "at this time Agilent has no interest in entering license negotiations." Upon information and belief, Agilent denies the remaining allegations in paragraph 27.

28. Agilent admits that on November 21, 2002, Finisar wrote to Mr. Pintner, and that on March 10, 2003, Agilent responded by stating that it had reviewed Finisar's

information and was not interested in negotiating a license at that time. Agilent denies the remaining allegations in paragraph 28.

29. Agilent admits that on May 16, 2003, Finisar wrote to Mr. Pintner directing him to a page from Agilent's website, stating Finisar's belief that the '769 patent covered Agilent's products, and suggesting that Mr. Pintner and Mr. Kralik meet, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 29.

30. Agilent admits that Mr. Pintner met with Finisar on June 10, 2003, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 30.

31. Agilent admits that a copy of a Finisar presentation and license offer was provided to Agilent, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 31.

32. Agilent admits that Finisar's outside counsel wrote to Agilent in September 2003, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 32.

33. Agilent admits that Finisar's outside counsel wrote to Agilent in February 2004, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 33.

34. Agilent admits that Finisar's outside counsel wrote to Agilent in March 2004, but denies that Agilent ever needed to take a license. Agilent also admits that Finisar enclosed a copy of claims that purportedly had been allowed, that Finisar's outside counsel stated in a March 2004 letter that: "the ineluctable conclusion is that Agilent's silence is deliberate and that it has made a choice to not respect Finisar's intellectual property rights and

the contributions Finisar has made to the industry," and that Finisar expressed interest in reaching an agreement. Agilent denies the remaining allegations in paragraph 34.

35. Agilent admits that Finisar's outside counsel wrote to Agilent in April 2004, but denies that Agilent ever needed to take a license. Agilent also admits that in that letter, Finisar attached a copy of an Agilent press release dated February 24, 2004, relating to the introduction of XFP MSA compliant products that offered "optical, electrical, thermal and digital diagnostics performance," including the "HFCT-711XPD" and "HFCT-721CPD." Agilent denies the remaining allegations in paragraph 35.

36. Agilent admits that it wrote to Finisar's outside counsel on May 10, 2004, in part to follow up on Finisar's June 10, 2003 presentation. Agilent also admits that it stated that Agilent was "not at present persuaded that we need a license to the '769 patent." Agilent denies the remaining allegations in paragraph 36.

37. Agilent admits that it stated in the May 10, 2004, letter that Agilent was studying the purported "allowed claims" of the '821 application and that it would advise Finisar of Agilent's conclusions by July, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 37.

38. Agilent admits that Finisar's outside counsel wrote to Agilent on January 3, 2005, but denies that Agilent ever needed to take a license. Agilent also admits that the January 3 letter requested Agilent's "conclusions" relating to the '821 application, and that Finisar also enclosed seven patent applications, including No. 2004/0175172 A1 which states on its face that it corresponds to the application that issued as the '077 patent. Agilent denies the remaining allegations in paragraph 38.

39. Agilent admits that it did not provide Finisar with the details of its conclusions relating to the claims of the '821 application, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations in paragraph 39.

40. Agilent admits that Finisar filed the instant lawsuit, but denies any infringement. Agilent is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 40, and therefore denies them.

## CLAIM I

41. Agilent incorporates by reference its responses to the allegations in paragraphs 1-40.

42. Agilent denies the allegations of paragraph 42.

43. Agilent denies the allegations of paragraph 43.

44. Agilent denies the allegations of paragraph 44.

45. Agilent denies the allegations of paragraph 45.

## CLAIM II

46. Agilent incorporates by reference its responses to the allegations of paragraphs 1-45.

47. Agilent denies the allegations of paragraph 47.

48. Agilent admits that it rejected Finisar's offers to license Finisar's patents and patent applications, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations of paragraph 48.

49. Agilent denies the allegations of paragraph 49.

50. Agilent denies the allegations of paragraph 50.

## CLAIM III

51. Agilent incorporates by reference its responses to the allegations of paragraphs 1-50.

52. Agilent denies the allegations of paragraph 52.

53. Agilent admits that it rejected Finisar's offers to license Finisar's patents and patent applications, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations of paragraph 53.

54. Agilent denies the allegations of paragraph 54.

55. Agilent denies the allegations of paragraph 55.

## CLAIM IV

56. Agilent incorporates by reference its responses to the allegations of paragraphs 1-55.

57. Agilent denies the allegations of paragraph 57.

58. Agilent admits that it rejected Finisar's offers to license Finisar's patents and patent applications, but denies that Agilent ever needed to take a license. Agilent denies the remaining allegations of paragraph 58.

59. Agilent denies the allegations of paragraph 59.

60. Agilent denies the allegations of paragraph 60.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Agilent is not infringing and has not infringed any valid claim of the '769, '077, '531 or '021 patents, either directly or by inducing others to infringe or contributing to infringement by others.

On December 1, 2005, Agilent completed the sale of the business unit that markets fiber optic transceiver products. That unit is now part of Avago Technologies, Pte. Ltd. Accordingly, Agilent cannot infringe any claim of the '769, '077, '531 or '021 patents after November 30, 2005.

### SECOND AFFIRMATIVE DEFENSE

The '769, '077, '531 or '021 patents are invalid for failure to comply with the conditions and requirements for patentability as set forth in Part II of Title 35, United States Code, including one or more of §§101, 102, 103, and/or 112.

### THIRD AFFIRMATIVE DEFENSE

Finisar's claims are limited by 35 U.S.C. § 287 for failure to mark its relevant products and for failure to provide notice to Agilent.

### FOURTH AFFIRMATIVE DEFENSE

By reason of the proceedings in the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the applications which relate to the '821 application, Finisar is estopped from claiming infringement by Agilent of one or more claims of the '077, '531 or '021 patents.

### FIFTH AFFIRMATIVE DEFENSE

The claims of the '769, '077, '531 and '021 patents cannot validly be construed to cover one or more of Agilent's products, which are practicing the prior art.

## COUNTERCLAIM

### (Declaratory Judgment)

Agilent avers as follows:

1. Agilent is a Delaware corporation having a principal place of business at 395 Page Mill Road, Palo Alto, California.

2. Paragraph 1 of the Amended Complaint alleges that Finisar is a Delaware corporation having a principal place of business at 1308 Moffett Park Drive, Sunnyvale, California, and does business in this judicial district.

3. This is a counterclaim for a declaration of noninfringement and invalidity of the claims of U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021. The Court has jurisdiction over this counterclaim under 28 U.S.C. §§ 1338, 2201 and 2202. Venue in this Court is proper under 28 U.S.C. § 1391(b) and (d).

4. This Court has personal jurisdiction over Finisar. Finisar resides in this judicial district and submitted to the jurisdiction of this Court by its Complaint and Amended Complaint.

5. Paragraphs 7-10 of the Amended Complaint allege that Finisar is the owner of the entire right, title, and interest in and to U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021.

6. Finisar alleges in Claims I-IV of the Amended Complaint that Agilent "has infringed and continues to infringe; has induced and continues to induce others to infringe; and/or has committed and continues to commit acts of contributory infringement of, one or more of the claims" of U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021.

7.  Accordingly, there exists an actual controversy between Agilent and Finisar concerning infringement and validity of the claims of U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021, and that controversy is ripe for adjudication by this Court.

8.  Agilent is not infringing, contributing to infringement or inducing infringement of and has not infringed, contributed to infringement or induced infringement of any claim of U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021.

9.  The claims of U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021, are invalid for failure to comply with the requirements of Part II, Title 35 of the United States Code, including one or more of §§101, 102, 103 and 112.

WHEREFORE, Agilent prays that judgment be entered in its favor, including:

A.  Dismissing the Amended Complaint with prejudice;

B.  Awarding Agilent the relief it seeks in its Counterclaim;

C.  Adjudging U.S. Patent Nos. 5,019,769; 6,941,077; 6,952,531; and 6,957,021 are invalid and not infringed by Agilent; and

        D.    Awarding Agilent any such other relief as this Court may deem just and proper.

YOUNG, CONAWAY, STARGATT
& TAYLOR, LLP

*/s/ John W. Shaw*
Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
jshaw@ycst.com

*Of Counsel*
Jesse J. Jenner
Sasha G. Rao
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Dated: December 7, 2005

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 7, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on December 7, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

### BY FEDERAL EXPRESS

> James Pooley, Esquire
> Milbank, Tweed, Hadley & McCoy LLP
> Five Palo Alto Square
> 3000 El Camino Real
> Palo Alto, CA 94306-2109

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ John W. Shaw

John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Agilent Technologies, Inc.*